UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENOS OSSON,<br>Petitioner,<br>v.<br>CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center; MARKWAYNE MULLIN; TODD BLANCHE; TODD LYONS; and JESUS ROCHA,<br>Respondents. | Case No.: 3:26-cv-4834-JES-JLB<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>**[ECF No. 12]** |

Before the Court is Petitioner Menos Osson's ("Petitioner") Second Amended Petition for Writ of Habeas Corpus. ECF No. 12 ("SAP"). On September 25, 2026, Respondents filed their Return to the Petition. ECF No. 14 ("Return"). On October 2, 2026, Petitioner filed a Traverse. ECF No. 15 ("Trav."). For the reasons set forth below, this Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner, a native and citizen of Haiti, entered the United States on March 11, 2011. SAP at 2. He was subsequently ordered removed, and, after a series of appeals, the order of removal became administratively final on July 24, 2017. Return at 1–2; Trav. at 5. Petitioner later applied for and received Temporary Protected Status ("TPS"). SAP at 2.

He remained at liberty in the United States for the next nine years, receiving work authorization and maintaining a clean criminal record. *Id.*

On July 27, 2026, the government ended the TPS designation for Haiti. *Id.* The next day, immigration officers stopped Petitioner for an immigration check as he was driving to work. *Id.* Petitioner was detained and transferred to Otay Mesa Detention Center, where he remains in custody. *Id.*

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas*, 533 U.S. at 687; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Noncitizens who are subject to a final order of removal are detained under 8 U.S.C. § 1231. *See* 8 U.S.C. § 1231. Section 1231 creates a 90-day removal period during which the noncitizen subject to the removal order must be detained. 8 U.S.C. §§ 1231(a)(1), (2). Section 1231(a)(6) authorizes detention after the 90-day removal period but "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. In *Zadvydas*, the Court limited this post-removal-period detention to a "period reasonably necessary to bring about removal," finding that six months was "presumptively reasonable." *Id.* at 689, 701.

After this six-month "grace period," the noncitizen must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," whereupon the burden shifts to the Government to "respond with evidence

sufficient to rebut that showing." *Id.* at 701; *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003). Where removal is not significantly likely in the reasonably foreseeable future, "the court should hold continued detention unreasonable and no longer authorized by statute" and grant the writ. *Owino v. Napolitano*, 575 F.3d 952, 955 (9th Cir. 2009) (quoting *Zadvydas*, 533 U.S. at 699–700).

## III. DISCUSSION

Petitioner contends that his continued detention violates *Zadvydas* and 8 U.S.C. § 1231 because the "six-month grace period has expired" and "there is no significant likelihood of removal in the reasonably foreseeable future." SAP at 4. Respondents argue that the Petition is "premature" because Petitioner's detention falls within the six-month grace period and because the Government can satisfy the "significant likelihood of removal" standard. Return at 3.

### A. The Six-Month Grace Period Under *Zadvydas* Has Expired.

As an initial matter, the Court must address the timing of the six-month grace period. The heart of the parties' disagreement is whether the six-month grace period under *Zadvydas* began when Petitioner's order of removal became final or when Petitioner was most recently detained. Petitioner argues that the grace period expired in January 2018, six months after Petitioner's order of removal became administratively final. Trav. at 3. Respondents, on the other hand, claim that the grace period has not yet expired because Petitioner has only been in detention since July 28, 2026, which is less than six months. Return at 3.

While neither the parties nor this Court has identified any controlling authority on this question, courts in this district are trending towards the former interpretation. *See Ulugbek v. Larose*, No. 3:26-cv-04586-RBM-DDL, 2026 WL 2547414 (S.D. Cal. Aug. 28, 2026) (collecting cases). In *Ulugbek*, the court explained that the "six-month presumptively reasonable period [had] passed for Petitioner" when his removal order became final on May 2, 2025, he was detained on June 10, 2026, and he filed his habeas petition on August 11, 2026. 2026 WL 2547414 at *1–2. The Court reasoned:

> [A]s multiple courts in this District have concluded, "a plain reading of 8 U.S.C. § 1231(a)(1)(B)" demonstrates that "the statute is unequivocal that the removal period begins on the ... day that Petitioner's order of removal bec[omes] administratively final." *Nguyen v. Mullin*, 2026 WL 1480803, at *2 (S.D. Cal. May 26, 2026) (citing *Baythavong v. Noem*, 26-cv-01138-DMS-MSB, ECF No. 7, at *2–3 (S.D. Cal. Apr. 6, 2026) ("Respondents failed to cite any authority to support their position that the presumptively reasonable period of detention only applies when the individual is actually in detention, i.e., that the nearly seven-year period in which Petitioner was on supervision is not relevant to the *Zadvydas* argument.")); *see also Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *7 (S.D. Tex. Jan. 28, 2026) ("[T]here is nothing in the relevant statutory language to suggest that the removal period restarts or resets automatically with another arrest or subsequent redetention.").

*Ulugbek*, 2026 WL 2547414, at *2. This position relies on the plain language of 8 U.S.C. § 1231(a)(1)(B), which states that the 90-day removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Under this view, *Zadvydas* extended a presumption of reasonableness three months *beyond the initial 90-day removal period*. This is supported by the language of *Zadvydas* itself:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period [from six months] to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of

> removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

*Zadvydas*, 533 U.S. at 701. *See also Castro-Napoles v. Noem,* No. 26-cv-03212-RFL, 2026 WL 1720963, at *3 (S.D. Cal. June 15, 2026) (relying on the legislative history used by the Supreme Court in *Zadvydas* to determine that the "six-month timeframe was [] repeatedly discussed in the legislative materials as the 'period in which the government was ordinarily able to complete the removal process' and was marked by the 'passage of time since a [non-citizen's] removal order—not detention time.'").

The Ninth Circuit has also characterized the six-month grace period as tied to the start of the removal period, not the date of detention. *See Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1100 n.5 (9th Cir. 2001) ("However, in *Zadvydas*, [] the Supreme Court read the statute to permit a 'presumptively reasonable' detention period of *six months* after a final order of removal—that is, *three months* after the statutory removal period has ended." (internal citations omitted) (emphasis in original)).

In contrast, Respondents have provided minimal support for their position that the six-month grace period begins at the moment of detention. They cite *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003), which referred to the *Zadvydas* grace period as a "detention period of six months," and *Xi v. U.S. I.N.S.*, 298 F.3d 832 (9th Cir. 2002), but both cases address *whether* the *Zadvydas* grace period applied to the petitioners, not *when* the period began.

The Court is convinced by Petitioner's supporting authorities and hereby holds that the presumptively reasonable six-month period of detention under *Zadvydas* begins when the removal period does, not when the noncitizen is detained. *See* 8 U.S.C. § 1231(a)(1)(B). Here, the six-month period in which Petitioner's detention was presumptively reasonable began on July 24, 2017, when Petitioner's final order of removal became final. Trav. at 5. It ended on January 24, 2018. Petitioner's present detention therefore falls far outside the six-month grace period under *Zadvydas* and is not entitled to any presumption of reasonableness.

**B. Petitioner Has Carried His Initial Burden Under *Zadvydas*.**

With the six-month period having expired, Petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner has carried this burden.

Petitioner testifies that he has not spoken with a deportation officer during his detention and "has no idea when or if he will ever be removed to Haiti." SAP at 2. Petitioner does not appear to have knowledge of any removal effort, flight inquiry, travel documents, or consular coordination in the nearly three-and-a-half months that he has been detained. *Cf. Wang v. Larose,* No. 26-cv-2686-JES-BJW, 2026 WL 1388708 (S.D. Cal. May 18, 2026) (finding petitioner had not met his burden under *Zadvydas* when respondents had travel documents for petitioner and previously attempted to place him on a removal flight).

To the best of Petitioner's knowledge, Respondents have taken no action to remove him to Haiti or any other country. *See generally* ECF No. 12-1 at 3. Petitioner thus has good reason to believe this pattern of inaction will continue into the reasonably foreseeable future, and thus he has met his burden under *Zadvydas*. *See Joseph v. Casey*, 817 F. Supp. 3d 962 (S.D. Cal. 2025) (finding petitioner had carried his burden under *Zadvydas* when it had been over a decade since his order of removal became final and respondents had not obtained travel documents for him).

**C. Respondents Fail to Meet Their Burden Under *Zadvydas*.**

The burden having shifted, Respondents must produce "evidence sufficient to rebut" Petitioner's showing. *Zadvydas*, 533 U.S. at 701. They have not done so.

Respondents claim that they are working "expeditiously" to facilitate Petitioner's removal. Return at 3. However, they are still in the process of preparing a request for Petitioner's travel documents. ECF No. 14-1 ¶ 15. This status has not changed since August 12, 2026, and there are several subsequent steps Respondents must also take before Petitioner's removal can be effectuated. Return at 3. After completing the request for Petitioner's travel documentation, Respondents must then "submit the request to ERO Removal and International Operations headquarters for approval." *Id.* After that, according

to Petitioner, Respondents must submit the request to Haiti, which will process it and issue a decision. Trav. at 5. Only then can Petitioner's removal be "effectuated promptly." ECF No. 14-1 ¶ 16.

Multiple courts in this district and elsewhere in the Ninth Circuit have held that merely submitting a request for travel documents is insufficient to show a significant likelihood of removal in the reasonably foreseeable future. *See Castro-Napoles*, 2026 WL 1720963, at *3; *Nguyen v. Mullin*, No. 26-CV-2815-JAO (JLB), 2026 WL 1480803 at *4 (S.D. Cal. May 26, 2026) (collecting cases). This Court agrees.

Here, Respondents have not even reached the stage of submitting Petitioner's travel document request, as they are still in the process of completing it. ECF No. 14-1 ¶ 15. On this record, Respondents have not demonstrated that removal is significantly likely in the reasonably foreseeable future. The Petition must, therefore, be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** the following:

(1) Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from immigration custody, on the same conditions as previously imposed under his pre-existing order of supervision, and to **FILE** a Notice of Compliance, no later than **October 16, 2026**, confirming that Petitioner has been released;

(2) Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6), unless and until Respondents establish in a filing with this Court that:

a. A valid, unexpired travel document exists for Petitioner's removal to Haiti; and

b. Petitioner has been confirmed on a specific removal flight scheduled to depart no later than fourteen days from the date of re-detention;

(3) Respondents are **ENJOINED** from re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4(l) and/or 241.13(i); and

(4) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: October 9, 2026

Honorable James E. Simmons Jr.
United States District Judge